UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LORI LYNN CHRISTY,

                        Plaintiff,

v.                                              5:13-CV-1552
                                                (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

LACHMAN, GORTON LAW FIRM                         PETER A. GORTON, ESQ.
  Counsel for Plaintiff
P.O. Box 89
1500 East Main St.
Endicott, NY 13761-0089

U.S. SOCIAL SECURITY ADMIN.                      FERGUS J. KAISER, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

        This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (DKt. No. 22.)  This case has proceeded in accordance with General

Order 18.

        Currently before the Court, in this Social Security action filed by Lori Lynn Christy

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 20, 21.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born on April 23, 1975. (T. 114.) She completed high school and some college. (T. 119.) Generally, Plaintiff's alleged disability consists of spondylosis, arthritis, adult attention deficit disorder ("ADD"), anxiety, and depression. (*Id.*) Her alleged disability onset date is January 1, 2008. (T. 938.) Plaintiff has no past relevant work.

### B.    Procedural History

On January 25, 2008, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (T. 740.) On June 17, 2008, Plaintiff applied for a period of Supplemental Security Income ("SSI") under Title XVI. (*Id.*) Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On December 22, 2009, Plaintiff appeared before the ALJ, Thomas P. Tielens. (T. 24-53.) On February 3, 2010, ALJ Tielens issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 8-23.) On February 9, 2011, the Appeals Council ("AC") denied Plaintiff's request for review, rendering ALJ Tielens's decision the final decision of the Commissioner. (T. 1-5.) Thereafter, Plaintiff timely sought judicial review in this Court. In a consent order dated December 12, 2011, this Court remanded the claim to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings. (T.

831-833.)[1]  On June 6, 2012, the AC entered an order vacating the final decision of the Commissioner and remanding the claims for further proceedings.  (T. 834-838.)[2]  On April 12, 2013, Plaintiff voluntarily withdrew her request for a hearing pertaining to the application for Title II benefits.  (T. 937.)  On April 17, 2013 Plaintiff amended her alleged onset date to January 1, 2008.  (T. 938-942.)  On August 13, 2013, Plaintiff appeared before ALJ Barry E. Ryan.  (T. 773-806.)  On September 23, 2013, ALJ Ryan issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 737-763.)  Plaintiff then commenced this action on December 17, 2013.  (Dkt. No. 1.) Neither party specifically address how the decision of the ALJ became the final decision of the Commissioner.  The ALJ's decision stated: "[this] decision will become final on the 61st day following the date of this notice. After [this] decision becomes final, [Plaintiff] will have 60 days to file a new civil action during the 60-day period starting with the day [this] decision becomes final."  (T. 455.)  It appears that 20 C.F.R. § 404.966 (Testing Elimination of the Request of Appeals Council Review) was implemented in this case; however, the ALJ's decision does not cite to any Regulation or other authority.

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 743-757.)  First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 17, 2008.  (T. 743.)  Second, the ALJ found that Plaintiff had the severe impairments of cervical spine degenerative disc disease, a

---

[1]    Northern District of New York Case No. 3:11-CV-0260.
[2]    The AC remanded for a more thorough evaluation of the medical opinion of consultative examiner Mary Ann Moore, Psy.D.; an evaluation of the medical opinion of consultative examiner Justine Magurno, M.D.; further assessment of Plaintiff's overall residual functional capacity; and to obtain evidence from a vocational expert to clarify the effects of the assessed limitations on Plaintiff's occupational base.  (T. 836-838.)

depressive disorder, ADD, and an anxiety disorder. (*Id.*) The ALJ determined that

Plaintiff's back disorder, hip and knee pain, head injury and headaches, and

hypothyroidism were non-severe impairments. (T. 745-746.) Third, the ALJ found that

Plaintiff did not have an impairment that meets or medically equals one of the listed

impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 747.) Fourth,

the ALJ found that Plaintiff had the residual functional capacity ("RFC") to: lift and/or

carry 50 pounds occasionally and 20 pounds frequently; sit six hours in an eight hour

work day; stand and/or walk six hours in an eight hour work day; and, push and/or pull

without limitations beyond the weight limits for lifting and carrying. (T. 749.)[3] In

addition, the ALJ found Plaintiff could:

> understand and follow simple instructions and directions; perform simple
> tasks with supervision and independently; maintain attention/concentration
> for simple tasks; regularly attend to a routine and maintain a schedule;
> relate to and interact appropriately with others to the extent necessary to
> carry out simple tasks; and handle reasonable levels of simple, repetitive
> work-related stress in that [she] [could] make decisions directly related to
> the performance of simple tasks in a position with consistent job duties
> that did not require her to supervise or manage the work of others.

(*Id.*) Fifth, the ALJ determined that Plaintiff had no past relevant work; however, there

were jobs that existed in significant numbers in the national economy Plaintiff could

perform. (T. 756.)

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

---

[3]     The exertional limitations essentially correspond with medium work which involves "lifting
no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If
someone can do medium work, we determine that he or she can also do sedentary and light work." 20
C.F.R. § 416.267(c). Light work involves "lifting no more than 20 pounds at a time with frequent lifting or
carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in
this category when it requires a good deal of walking or standing, or when it involves sitting most of the
time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full
or wide range of light work, you must have the ability to do substantially all of these activities. If someone
can do light work, we determine that he or she can also do sedentary work, unless there are additional
limiting factors such as loss of fine dexterity or inability to sit for long periods of time." *Id.* § 416.267(b).

## A. Plaintiff's Arguments

Plaintiff makes six separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ's assessment of vocational factors was erroneous. (Dkt. No. 20 at 2-4 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ failed to comply with the AC remand order. (*Id.* at 4-5.) Third, Plaintiff argues the ALJ failed to obtain testimony from a vocational expert ("VE") to address the non-exertional impairments. (*Id.* at 5-9.) Fourth, Plaintiff argues the ALJ failed to assess all severe impairments. (*Id.* at 9-10.) Fifth, Plaintiff argues the ALJ's RFC determination was not supported by substantial evidence. (*Id.* at 10-18.) Sixth, and lastly, Plaintiff argues the ALJ erred in refusing to subpoena the non-examining medical experts to appear at the hearing so that Plaintiff could cross-examination them. (*Id.* at 18-20.)

## B. Defendant's Arguments

In response, Defendant makes four arguments. First, Defendant argues the ALJ properly complied with the AC remand order. (Dkt. No. 21 at 12-15 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ properly assessed all of Plaintiff's severe impairments. (*Id.*at 15-18.) Third, Defendant argues the ALJ properly weighed the medical opinions of the record. (*Id.* at 18-23.) Fourth, and lastly, Defendant argues Plaintiff did not have an absolute right to cross-examine the non-examining medical experts. (*Id.* at 23-25.)

## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v.*

*Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In

other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

For the ease of analysis, Plaintiff's arguments will be address out of the order in which Plaintiff raised them and in a consolidated manner.

## A.    Whether the ALJ Properly Complied with the AC's Remand Order.

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 21 at 12-15 [Def.'s Mem. of Law].) The Court adds the following analysis.

On remand from the AC, an ALJ "shall take any action that is ordered by the [AC] and may take any additional action that is not inconsistent with the [AC's] remand order." 20 C.F.R. § 404.977(b). Failure to comply with a remand order may be grounds for remand. *Mortise v. Astrue*, 713 F. Supp. 2d 111, 123 (N.D.N.Y. 2010) (finding error for an ALJ to not follow the AC's orders); s*ee Gorman v. Astrue*, No. 08-CV-0251, 2009 WL 4884469, at *10 (N.D.N.Y. Dec. 10, 2009) (remanding for failure to comply with an AC's remand order); *see Scott v. Barnhart,* 592 F.Supp.2d 360, 371–72 (W.D.N.Y.2009) ("The ALJ's failure to comply with the [AC's] order constitutes legal error, and necessitates a remand.").

Plaintiff argues the ALJ committed legal error in failing to comply with the AC remand order, because the ALJ failed to obtain VE testimony. (Dkt. No. 20 at 3, 4-5 [Pl.'s Mem. of Law].)

Here, the AC vacated the ALJ's 2010 decision and remanded for further proceedings. The AC noted that the 2010 decision indicated Plaintiff had "significant" exertional and non-exertional impairments and "[c]onsultation with a vocational resource *may* be required." (emphasis added) (T. 837.) Further in the order, the AC directed the ALJ to obtain evidence from a vocational expert to "clarify the effect of the assessed limitations." (T. 838.) However, the AC did not conclude that the sole error in the 2010

decision was failure to obtain VE testimony. The AC also stated that the 2010 decision failed to properly evaluate medical opinion evidence in the record, which ultimately led to an unsupported RFC determination. (T.836-838.) The AC directed the ALJ to re-evaluate Plaintiff's RFC based on a proper assessment of the medical opinion evidence in the record.

Although failure to comply with an AC remand order may constitute legal error and ground for remand, any error committed here was harmless. *See Quimby v. Com'r of Soc. Sec.*, No. 09-CV-20, 2010 WL 2425904, at *8 (D. Vt. Apr. 13, 2010) *report and recommendation adopted sub nom. Quimby v. Astrue*, No. 09-CV-20, 2010 WL 2425903 (D. Vt. June 8, 2010) (citing *Hernandez–Devereaux v. Astrue*, 614 F.Supp.2d 1125, 1134 (D. Or. 2009) (holding that "to the extent that the ALJ here failed to properly follow the Appeals Council's instructions, he committed reversible error only to the extent that such error was not harmless, i.e., only to the extent that substantial evidence does not support the ALJ's ultimate conclusions").

For the reasons stated in Part IV.C, the ALJ properly assessed medical opinion evidence in the record and the ALJ's RFC determination was supported by substantial evidence. Further, for the reasons stated in Part IV.D, the ALJ properly relied on the Medical Vocational Guidelines in making a determination that Plaintiff was not disabled. The ALJ properly complied with the AC remand order because the ALJ obtained additional medical evidence and conducted a thorough review of the medical opinion in the record in formulating his ultimate RFC determination. Even if the ALJ erred in complying with the AC remand by failing to obtain VE testimony, that error was harmless. The ALJ's RFC determination was supported by substantial evidence and

the RFC did not provide such restrictive non-exertional limitations that the assistance of VE testimony was required; therefore, there was no need to seek VE testimony at step five.

**B.      Whether the ALJ Properly Assessed Plaintiff's Severe Impairments.**

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 21 at 15-18 [Def.'s Mem. of Law].)  The Court adds the following analysis.

At step two of the sequential evaluation process, the ALJ must determine whether the plaintiff has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities.  *See* 20 C.F.R. § 416.920(c).  The plaintiff bears the burden of presenting evidence establishing severity.  *Miller v. Comm'r of Social Sec.,* No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); *see also* 20 C.F.R. § 416.912(a).  Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," *Dixon v. Shalala,* 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe."  *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y. 1995).

Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'"  *Rosario v. Apfel,* No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. March 19,1999) (quoting *Bowen v. Yuckert,* 482 U.S. 137, 154 n.12, 107 S.Ct. 2287 (1987)).  In addition, "[w]here an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly

considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, No. 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb.18, 2010); *Lasiege v. Colvin*, No. 12-CV-01398, 2014 WL 1269380, at *10-11 (N.D.N.Y. Mar. 25, 2014); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps); *see also* 20 C.F.R. § 416.923 (stating that the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity").

Plaintiff specifically argues that the ALJ failed to consider Plaintiff's migraines a severe impairment. (Dkt. No. 20 at 9 [Pl.'s Mem. of Law].) Plaintiff contends that her migraines caused concentration issues which the ALJ failed to account for in his RFC determination. (*Id.* at 9-10.) Defendant counters that the ALJ properly assessed Plaintiff's complaints of headache in his decision and that Plaintiff failed to overcome her burden of establishing migraines as a severe impairment at step two. (Dkt. No. 21 at 17 [Def.'s Mem. of Law].)

At step two the ALJ conducted a thorough analysis of Plaintiff's medically determinable impairments, both severe and non-severe. (T. 743-746.) The ALJ provided sufficient evidence to support his conclusion at step two that Plaintiff's migraines were non-severe impairments. He noted the limited treatment received for migraines did not evidence that they imposed more than a minimal limitations on her ability to perform basic work activities. (T. 746.) Further, any error in finding Plaintiff's migraines non-severe was harmless, because the ALJ proceeded with the sequential analysis. The RFC determination adequately accounts for any limitations do to

concentration by limiting Plaintiff to simple tasks. (T. 749.) Therefore, remand is not recommended on this issue.

### C. Whether the ALJ Properly Weighed the Medical Opinions in the Record.

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 21 at 18-22 [Def.'s Mem. of Law].) The Court adds the following analysis.

Plaintiff argues the ALJ's RFC determination was not supported by substantial evidence, because the ALJ failed to properly assess the medical opinions of Mary Ann Moore, Psy.D.; Justine Margurno, M.D.; Chukuemeda Efobi, M.D.; Harminder Grewal M.D.; Woodrow Janese, M.D.; and, Louis Fuchs, M.D. (Dkt. No. 20 at 10-18 [Pl.'s Mem. of Law].)

The relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship; relevant evidence which supports the opinion; the consistency of the opinion with the record as a whole; the specialization (if any) of the opinion's source; and, "other factors." 20 C.F.R. § 416.927(c)(1)-(6).

### i.) Dr. Moore

Dr. Moore conducted a psychiatric evaluation of Plaintiff in September of 2008. (T. 561-566.) In her medical source statement, Dr. Moore opined Plaintiff could "follow and understand simple directions and instructions," she could "perform simple rote tasks under supervision and [could] consistently perform simple tasks." (T. 564.) Dr. Moore further opined Plaintiff showed intact attention, concentration, and memory. (*Id.*) Dr. Moore stated Plaintiff could learn simplistic and complex tasks. (*Id.*) Dr. Moore stated

Plaintiff "may have some difficulty dealing with stress;" however, she could adequately relate to others. (*Id.*) She further opined that Plaintiff's depression "may cause some problems with making appropriate work decisions and maintaining a regular work schedule." (*Id.*) The ALJ afforded the opinion of Dr. Moore "some weight" reasoning that it was not supported by her own examination findings; and further, her use of the term "may" did not definitively establish limitations. (T. 754.)

Plaintiff specifically argues that the ALJ erred in relying on the word "may" in affording Dr. Moore's opinion weight. (Dkt. No. 20 at 12 [Pl.'s Mem. of Law].) However, the ALJ did not err in relying Dr. Moore's use of the word "may" as a qualifying term for the limitations she observed. The ALJ's RFC accounts for the limitations imposed by Dr. Moore in which she placed no qualifier, such as Plaintiff's ability to follow and understand simple directions and instructions. (T. 749.) An ALJ does not have to strictly adhere to the entirety of one medical source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."), *see also Zongos v. Colvin*, No. 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion).

Plaintiff argues the ALJ's rejection of Dr. Moore's limitations involving Plaintiff's ability to handle stress and maintain a schedule, hinges on a "fundamental misunderstanding of psychiatric issues." (Dkt. No. 20 at 12 [Pl.'s Mem. of Law].) The

Plaintiff cannot simultaneously admonish the ALJ for "substituting his lay opinion for that of a psychiatric expert" and then require the ALJ to have a fundamental understanding of psychiatry. (*Id.*)  The ALJ properly applied the Regulations in determining what weight to afford the opinion of Dr. Moore.  The ALJ properly adopted those portions of Dr. Moore's limitations which were definitive and consistent with her observations and properly afforded those limitations which were not definitive and inconsistent with her observations lesser weight.

### ii.)  Dr. Efobi

Dr. Efobi reviewed the medical record and completed a medical source statement at the request of the Social Security Administration.  (T. 1005-1013.)  Dr. Efobi opined that based on the medical evidence in the record, Plaintiff had mild limitations in her ability to: understand and remember simple instructions; carry out simple instructions; make judgments on simple work-related decisions; and, respond appropriately to usual work situations and to changes in a routine work setting.  (T. 1005-1006.)  Dr. Efobi opined that Plaintiff had moderate limitations in her ability to: understand and remember complex instructions; carry out complex instructions; and, make judgments on complex work-related decisions.  (T. 1005.)  Dr. Efobi specifically noted that Plaintiff's problems in attention and concentration would affect Plaintiff's ability to complete complex tasks more than her ability to complete simple tasks.  (*Id.*)

Plaintiff argues the ALJ erred in affording Dr. Efobi "great weight."  (Dkt. No. 20 at 10-15.)  Specifically, Plaintiff argues Dr. Efobi deserved less weight because he did not personally examine Plaintiff.  (*Id.*)  Plaintiff maintains the Regulations "are clear" and state: "we give more weight to the opinion of a source who has examined you than to

the opinion of a source who has not examined you." (*Id.*) However, as correctly stated by Defendant, Plaintiff failed to quote the full language of the 20 C.F.R. § 416.927(c)(1), which reads: "*[g]enerally*, [the agency] give[s] more weight to the opinion of a source who has examined [the plaintiff] than to the opinion of a source who has not examined [the plaintiff]." (Dkt. No. 21 at 19-20 [Def.'s Mem. of Law].) Therefore, the ALJ did not err in affording a non-examining medical source "great weight" purely because the source did not personally examine Plaintiff. The examining relationship between source and plaintiff is but one factor outlined in the Regulations.

Although an examining source is "generally" afforded more weight than a non-examining source, an ALJ is allowed to afford a non-examining source more weight than an examining one. "An ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability." *Baszto v. Astrue,* 700 F.Supp.2d 242, 249 (N.D.N.Y.2010); *see Diaz v. Shalala,* 59 F.3d 307, 313 n. 5 (2d Cir.1995) (noting that the applicable regulations "permit the opinions of non-examining sources to override treating sources' opinions provided they are supported by evidence in the record"); *Florez v. Apfel,* No. CV 97–3052, 1998 WL 760334, at *6–7 (E.D.N.Y. Aug. 31, 1998) ("Given that [the medical expert's] opinions are supported by the record, and [the treating physician's] opinion that the [claimant] was disabled is not, the ALJ was free to find the non-examining expert's testimony persuasive.").

Dr. Efobi's opinion, as stated by the ALJ, was supported by the evidence in the record. For example, Dr. Efobi opined Plaintiff had no limitations in her abilities to interact appropriately with the public, supervisors, or co-workers. (T. 1006.) This

opinion was consistent with Dr. Moore's opinion that Plaintiff could work under supervision and relate adequately to others. (T. 564.) Therefore, the ALJ did not err in the weight he assigned to Dr. Efobi's medical opinion.

### iii.) Dr. Magurno, Dr. Grewal, Dr. Janese, Dr. Fuchs

Plaintiff argues that Dr. Magurno and Dr. Grewal's physical assessments of Plaintiff's limitations were more restrictive than the limitations outlined in the ALJ's RFC determination. (Dkt. No. 20 at 16 [Pl.'s Mem. of Law].) Plaintiff contends that "common sense" required the ALJ provide these opinions more weight. (*Id.* at 17.)

Dr. Magurno performed a physical consultative exam in September of 2008. (T. 567-574.) In a medical source statement Dr. Magurno opined that Plaintiff "should avoid walking on uneven ground, heights, and ladders." (T. 571.) Dr. Magurno further noted Plaintiff had "marked limitations for lifting and carrying." (*Id.*) Dr. Magurno noted "moderation limitations" for stair climbing, pushing, and pulling. (*Id.*) She observed "mild limitations" for walking, standing, and sitting. (*Id.*)

The ALJ properly afforded Dr. Magurno's opinion "limited weight," reasoning that the limitations she imposed were not supported by her exam findings, other objective medical evidence of record, or Plaintiff's treatment records. (T. 750.) For example, Dr. Magurno opined that Plaintiff had "marked" limitations for lifting and carrying; however, her examination report noted Plaintiff had full range of motion in her shoulders, elbows, forearms, wrists, hips, knees, and ankles. (T. 570-571.) The ALJ also relied on other medical evidence in the record which did not support Dr. Magurno's more restrictive limitations. For example, treatment notes indicated that Plaintiff had no tenderness on

palpitation of the spine, good range of motion without pain, and intact upper extremity power and sensation.  (T. 580, 712.)

Regarding the non-examining medical experts, Dr. Janessa and Dr. Fuchs, Plaintiff only offers that the ALJ erred in providing non-examining medical experts "too much weight."  (Dkt. No. 20 at 17 [Pl.'s Mem. of Law].)  However, as previously discussed, an ALJ may rely on the opinions of non-examining medical experts. *See Baszto,* 700 F.Supp.2d at 249.

The ALJ also properly afforded "no weight" to the medical opinion of Dr. Grewal dated May 16, 2013.  (T. 752.)  The ALJ reasoned that Dr. Grewal's opinion was not supported by objective medical evidence, treatment notes, or treatment history.  (*Id.*) The ALJ further reasoned, Dr. Grewal's opinion stated his restrictions were from May 16, 2013 through November 15, 2013, but provided no opinion regarding her limitations since her alleged onset date.  The reasons provided by the ALJ for affording Dr. Grewal's opinion no weight were proper under the Regulations outlined in  20 C.F.R. § 416.927(c)(1)-(4).

Therefore, for the reasons stated in Defendant's brief and herein, the ALJ's RFC was supported by substantial evidence.  The ALJ properly afforded weight to the medical opinion evidence in the record and remand is not recommend.

### D.    Whether VE Testimony was Required.

After carefully considering the matter, the Court answers this question in the negative, for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 21 at 13-15 [Def.'s Mem. of Law].)  The Court adds the following analysis.

At step five in the sequential evaluation, an ALJ is required to perform a two part process to first assess the plaintiff's job qualifications by considering her physical ability,

age, education, and work experience, and then determine whether jobs exist in the national economy that the plaintiff could perform. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(f); *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical–Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids"). *See Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir.1986).

The Second Circuit has explained that an ALJ may not solely rely on the Grids if a non-exertional limitation "has any more than a 'negligible' impact on a [plaintiff's] ability to perform the full range of work." *Selian v. Astrue,* 708 F.3d 409, 421 (2d Cir.2013) (quoting *Zabala v. Astrue,* 595 F.3d 402, 411 (2d Cir.2010)). A non-exertional impairment is non-negligible "when it ... so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Zabala,* 595 F.3d at 411. Whether VE testimony is required must be determined on a "case-by-case basis." *Bapp* 802 F.2d, at 605–06. Further, "the mere existence of a non-exertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the [Grids]." *Id.* at 603.

Plaintiff argues that considering Plaintiff's non-exertional impairments, the ALJ should have called on a VE to testify as to the number of jobs that exist in the national economy which Plaintiff could perform. (Dkt. No. 20 at 5 [Pl.'s Mem. of Law].) Plaintiff asserts that the non-exertional mental limitations in the ALJ's RFC determination significantly erode the occupational base and require the testimony of a vocational expert. (*Id.* at 6.) Plaintiff also asserts that her non-exertional limitations were more

limiting than the ALJ's RFC determination; however, as discussed in Part IV.C. the ALJ's RFC determination was supported by substantial evidence. (*Id.* at 6-8.) Therefore, the only point of issue here is whether the non-exertional limitations outlined in the ALJ's RFC determination significantly erode the occupational base such that VE testimony was necessary.

Here, the ALJ essentially limited Plaintiff to simple, routine, repetitive work. (T. 749.) "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85–15, 1985 WL 56857, at *4. "A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." *Id.* The ALJ's RFC does not provide for limitations that go beyond the basic mental demands required for unskilled work as explained in SSR 85-15. The ALJ's RFC determination was supported by substantial evidence, and the non-exertional limitations imposed in the RFC were consistent with the requirements inherent in unskilled work; therefore, Plaintiff's occupational base was not significantly eroded and the ALJ did not err in relying on the Grids.

Plaintiff also raises the argument that the ALJ erred in providing "no weight" to the VE testimony proffered by Plaintiff. (Dkt. No. 20 at 3 [Pl.'s Mem. of Law].) Specifically, Plaintiff argues the ALJ was incorrect in his assertion that he is responsible for calling on VE testimony. Plaintiff argues that reliance on HALLEX I-2-5-48 which states that the ALJ could not use VE testimony from a source who had prior

professional contact with Plaintiff was true, but "irrelevant." (*Id.*)  Plaintiff also argues the ALJ erred in finding the VE interrogatories deficient.  (*Id.* at 4.)

Ultimately, the ALJ is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [a plaintiff] can do, given [plaintiff's] residual functional capacity and vocational factors." 20 C.F.R. § 416.960(c)(2).  As previously stated in Part IV.A-D, the ALJ's RFC determination was supported by substantial evidence and the ALJ's reliance on the Grids was proper. The ALJ is responsible for providing evidence that demonstrates whether there are jobs Plaintiff can do and the ALJ properly did that in this case.  Therefore, the ALJ did not err in failing to consider Plaintiff's privately retained VE testimony.

In addition, the reasons the ALJ provided for not affording weight to the VE testimony were proper and not "irrelevant."  First, the VE testimony was not in response to the ALJ's RFC determination; therefore, any testimony provided by the VE would not provide an adequate representation of occupations that Plaintiff could perform.  Second, the ALJ was correct in his assertion that it would be improper for him to accept testimony from a VE who had a prior professional relationship with Plaintiff.  Further, the written interrogatories were provided by the Plaintiff and therefore did not provide the ALJ an opportunity to question the VE regarding any conflicts between his testimony and the Dictionary of Occupational Titles ("DOT"), as required under SSR 00-4p, (S.S.A. Dec. 4, 2000).  SSR 00-4p states, "as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is [] consistency" between the testimony and DOT.  Therefore, for the above reasons and

the reasons outlined in Defendant's brief, the ALJ did not err in affording "no weight" to the VE testimony supplied by Plaintiff.

### E. Whether Plaintiff had an Absolute Right to Cross-Examine the Non-Examining Medical Experts at the Hearing.

After carefully considering the matter, the Court answers this question in the negative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 21 at 23-25 [Def.'s Mem. of Law].) The Court adds the following analysis.

Plaintiff argues that the ALJ's refusal to issue a subpoena requiring the presence of the non-examining medical experts at the hearing denied Plaintiff her due process rights because Plaintiff was unable to cross-examine the experts. (Dkt. No. 20 at 18-20 [Pl.'s Mem. of Law].)

In the Notice of Hearing dated December 20, 2012, Plaintiff was informed that she could request a subpoena and provided the procedure for doing so. (T. 874.) Plaintiff was informed that a request for a subpoena must include: what documents are needed and/or who the witnesses are; the location of the documents or witnesses; what facts are expected to be proven by the document or witness; and why these facts could not be proven without a subpoena. (*Id.*) These factors correspond to the requirements of a subpoena as outlined in 20 C.F.R. § 405.332(b)-(e). S*ee also Id.* at § 404.950(d)(2). The Regulations further state that an ALJ may issue a subpoena when it is "reasonably necessary for the full presentation of a claim." *Id.* at § 404.332(a).

In a letter dated January 24, 2013, Plaintiff requested that any medical expert testimony be provided in person or by video. (T. 930.) Plaintiff's request did not provide any additional information or support for her request. (*Id.*) On February 27, 2013, the ALJ informed Plaintiff that he was in receipt of her request to have the medical expert

present at the hearing; however, the letter informed Plaintiff that the opinions were obtained before the hearing and Plaintiff's testimony, therefore the request was denied. (T. 901.)  At the hearing on March 6, 2013, Plaintiff objected to the introduction of the medical expert interrogatories, stating specifically that the "ALJ was required to produce experts for questioning."  (T. 769.)  The ALJ noted the objection and informed the attorney at the hearing that he did not have the authority to "compel" the experts to appear.  (T. 770.)  The ALJ adjourned the March 2013 hearing to allow Plaintiff to gather and submit more medical evidence.  At the subsequent hearing held on August 13, 2013, the ALJ asked Plaintiff's counsel if there were any objections to the record, and counsel indicated that he had no objections.  (T. 775.)

Plaintiff relies on the holding in *Townley v. Heckler*, 748 F.2d 109, 114 (2d Cir. 1984) in support of her argument.  The *Townley* Court held that a plaintiff's due process rights were violated because she was not offered the chance to cross-examine testimony taken post hearing from a vocational expert. *Townley*, 748 F.2d at 114. However, the situation presented in the case at bar falls more in line with the Second Circuit's holding in *Yancy v. Apfel*, 145 F.3d 106 (2d Cir. 1998).  In *Yancy* the plaintiff argued that her due process rights were violated when the ALJ refused to issue a subpoena so that plaintiff could cross-examine a medical expert who supplied medical evidence prior to the hearing and decision.  *Yancy*, 145 F.3d at 111.

The Second Circuit held that "the right to due process in a social security disability hearing does not require that a reporting physician be subpoenaed any time a [plaintiff] makes such a request."  *Id.*  The *Yancey* Court reasoned that "[t]he plain

language of [20 C.F.R. § 404.950(d)(1)][4] clearly places the decision to issue a subpoena within the sound discretion of the ALJ." *Id.* The Court further reasoned that a subpoena, and cross-examination, were not required where the ALJ allowed the plaintiff a "fair and meaningful opportunity to present her case;" there was no indication the medical opinion in question was inaccurate or biased; and further, where there was no indication that subpoenaing the medical expert would have "added anything of value to the proceedings." *Id.* at 113. Therefore, absent a need to fully develop the evidence of the case, the opportunity to cross-examine a reporting physician is not required. *See Oliphant v. Astrue*, No. 11-CV-2431, 2012 WL 3541820, at *23 (E.D.N.Y. Aug. 14, 2012) ("Although cross-examination might have revealed information helpful to evaluating plaintiff's claim, the ALJ had the discretion to determine that in-person testimony was unlikely to add new or valuable material information. There is no reason to suspect, and plaintiff does not allege, that either expert submitted biased or inaccurate opinions. Thus the ALJ did not abuse his discretion in this case, and this does not constitute a ground for remand.")

Here, the record in the case was fully developed. As outlined by Defendant, the record contained over 900 pages of medical records spanning a five year period and over 60 pages of testimony. (Dkt. No. 21 at 24 [Def.'s Mem. of Law].) In addition, the ALJ adjourned the first hearing on remand to allow Plaintiff time to obtain and submit more evidence. It was within the ALJ's discretion to issue a subpoena and Plaintiff did not have an absolute right to cross-examine the medical experts, because record was

---

[4] When it is reasonably necessary for the full presentation of a case, an administrative law judge or a member of the Appeals Council may, on his or her own initiative or at the request of a party, issue subpoenas for the appearance and testimony of witnesses and for the production of books, records, correspondence, papers, or other documents that are material to an issue at the hearing. 20 C.F.R. 404.950(d)(1).

fully developed and there was no indication that the medical opinions were inaccurate or biased. Therefore, remand is not recommended.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have

**FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: September 24, 2015

_William B. Mitchell Carter_
William B. Mitchell Carter
U.S. Magistrate Judge